[Civ. No. 21330. Second Dist., Div. One. Feb. 1, 1956.]

CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Appellant, v. CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD, Respondent.

O'Melveny & Myers, Sidney H. Wall and Roy E. Potts for Appellant.

Edmund G. Brown, Attorney General, Irving H. Perluss, Assistant Attorney General, and Vincent H. Lafferty, Deputy Attorney General, for Respondent.

DORAN, J.—A peremptory writ of mandate was sought by the appellant for the purpose of obtaining a judicial review of a decision of the Unemployment Insurance Appeals Board in the matter of Marietta A. Roverud, Claimant; Douglas Aircraft Company, Employer. A demurrer to appellant's amended petition for writ of mandate was sustained

with 10 days to amend, no amendment was filed, and the judgment appealed from recites that the action is dismissed, and a peremptory writ denied. There is no dispute as to the facts, and at the original hearing before a referee, stipulation was entered into concerning the facts.

As set forth in appellant's brief, "Appellant, prior to October 16, 1953, was the voluntary carrier for . . . a voluntary plan providing unemployment compensation disability benefits for employees of Douglas Aircraft Company, Inc. Effective 12:01 A. M. October 16, 1953, the voluntary plan was discontinued. At that time . . . the Department of Employment through the Disability Fund assumed coverage . . . for all employees. . . ."

The claimant became pregnant prior to August 17, 1953, at which time employment was voluntarily discontinued because of nausea induced by a lacquer-like odor in the working area where claimant was employed, combined with the pregnant condition. Claimant remained absent throughout the pregnancy period which was terminated by delivery on February 4, 1954. Shortly thereafter the claimant was discharged from the hospital, and subsequently filed a claim for benefits to commence as of March 26, 1954, the day following a prescribed waiting period; the primary cause of disability being episiotomy and repair, an episiotomy being "a surgical incision in the vaginal opening employed to prevent tearing during delivery."

"Benefits were paid the Claimant commencing March 26, 1954, and the question in this case is whether the Appellant or the Disability Fund has the liability for benefits so paid. It is conceded that Claimant was entitled to receive the benefits,—the only question is as to who has the obligation to make the payments."

The claimant's claim was originally referred to the Department of Employment which denied coverage, whereupon appellant took an appeal to the referee who rendered a decision affirming the position of the Department of Employment denying coverage. Appellant then appealed to the California Unemployment Insurance Appeals Board which in turn affirmed the decision of the referee. Appellant thereafter filed the present petition for writ of mandate which was denied by the superior court.

It is appellant's contention that, "I. Under the Unemployment Insurance Code appellant is not liable for the reason that claimant has no disability within the meaning of

the Unemployment Insurance Act while appellant provided coverage. II. Under the terms of the voluntary plan appellant is not liable in that appellant assumed no liabilities under the plan for the disability in question. III. The disability fund is liable for the benefits here in question. IV. This is a proper case for the issuance of a writ of mandate.''

Answering these contentions, respondent maintains that no liability is sought to be enforced against the appellant pursuant to section 2626 of the Unemployment Insurance Code, and that such section relied upon by appellant is not applicable; that pregnancy occurring during the period of coverage of the voluntary plan does constitute a ''disability while insured'' for which appellant is liable unless, as is not here the case, it is excluded from the contract; that such coverage is within the scope of the voluntary plan making appellant liable notwithstanding the later cancellation of the voluntary plan contract.

The voluntary plan insurance, in operation until October 16, 1953, required appellant company to pay a designated amount ''Upon receipt of proof that any employee while insured under this policy has become disabled by mental or physical illness or injury *except as hereinafter excluded* and is thereby prevented from performing his regular or customary work . . . subject to the limitations and exceptions hereinafter set forth.'' (Italics added.)

The plan provides that ''No benefits shall be payable hereunder: . . . (4) for any disability caused by or arising in connection with pregnancy up to the termination of such pregnancy and for a period of 35 days thereafter except that if the employee is hospital confined subsequent to the Twenty-eighth day following termination of such pregnancy because of a disability due to such pregnancy, the period for which benefits will be paid will commence with the day hospital confinement commences or the thirty-sixth day following such termination, whichever is the earlier.'' The policy contains a list of definitions, none of which include ''disability.'' It is further stated that ''This policy and the application of the Employer constitute the entire contract between the parties.''

Section 2626 of the Unemployment Insurance Code provides that ''In no case shall the term 'disability' or 'disabled' include any injury or illness caused by or arising in connection with pregnancy up to the termination of such pregnancy and for a period of 28 days thereafter.''

Section 2608 provides that "disability benefit period" means "the continuous period of unemployment and disability beginning with the first day with respect to which the individual files a valid claim for unemployment compensation disability benefits."

The trial court's order sustaining demurrer to appellant's petition contains the following reasons for the decision: "Here the illness or injury to the employee, viz., surgery necessary for the delivery of the child and surgical repairs, was caused by or arose in connection with pregnancy, and continued beyond the 28th day after termination of pregnancy. Under Limitations in the policy issued by petitioner, in (5) it is provided that no benefits shall be payable for the first seven days of disability arising from other injury or illness. If an employee had been injured the day before the policy was terminated, the insurer would have been liable for disability benefits commencing on the eighth day for the period provided in the policy.

"In such case it was the occurrence of injury while the policy was in force that established the insurer's liability, just as the occurrence of pregnancy during the effective period of the policy establishes its liability for the payment of benefits if the employee is disabled on account thereof after the 28th day following the birth of the child. . . . The court concludes that the petition does not state facts sufficient to constitute a cause of action."

In the original referee's order concluding "that the claimant was disabled within the meaning of Voluntary Plan OLO-0125 at the time she terminated her employment on August 17, 1953, and continued to be disabled throughout the period involved in this appeal," attention is called to two previous decisions of the Appeals Board. In Decision Number 211, "the Appeals Board enunciated the principle that for the limited purpose of extending coverage in pregnancy cases, the termination of coverage clause effective upon termination of employment could not be construed by the insurer under a voluntary plan so as to deprive a claimant of disability benefits under said plan."

"In Appeals Board Disability Decision No. 123," the referee's order continued, "this principle was extended to the termination of coverage clause in a voluntary plan relating to discontinuance of the policy. In this case the claimant in question resigned on July 15, 1952, because of pregnancy. She was covered by a voluntary plan at that time. On

November 7, 1952, she filed a claim for disability benefits alleging the existence of disability from October 10, 1952. The claimant's child was born on October 9, 1952, and the claimant injured her knee the following day. The Department found that the injury was caused by or arose in connection with her pregnancy and this finding was upheld by the Board. The insurer had cancelled its policy effective October 1, 1952. . . . the Appeals Board said: 'It is our opinion that the reasoning in Disability Decision No. 211 which continues coverage in pregnancy cases following individual terminations of employment, applies equally to pregnancy cases where the policy is cancelled prior to the termination of pregnancy, and for four weeks thereafter. To hold otherwise would be to allow cancellations of voluntary plan policies to affect adversely the Disability Fund in pregnancy cases. Therefore we hold that the insurer of the voluntary plan remained liable for the payment of benefits to the claimant under the voluntary plan.' The rationale of the last cited case is controlling herein. . . . In view of the foregoing the Referee concludes that the claimant was eligible for disability benefits under Voluntary Plan No. 010-0125.''

The reasoning in the referee's decision above quoted, and in the order of the trial court sustaining respondent's demurrer, appears to be sound. ■ As pointed out in the respondent's brief, it is fundamental that in reference to policies of insurance, the terms thereof ''are to be construed most strongly against the insurer.'' To adopt the appellant's contentions herein would violate this rule and interpret the contract not against but in favor of the insurer.

As hereinbefore indicated, both parties concede ''that claimant was entitled to receive benefits—the only question is as to who has the obligation to make the payments.'' Under the record as here presented, it does not appear that the trial court abused its discretion or committed reversible error in denying appellant's petition for a writ of mandate.

The judgment is affirmed.

Fourt, J., and Nourse (Paul), J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.